UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Western Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:   14-82459 |
| | ) | |
| SMART MOTION ROBOTICS, INC. | ) | Chapter:  11 |
| | ) | Honorable Thomas M. Lynch |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

**FINAL ORDER (1) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO U.S.C. §§ 363 AND 364 AND (2) GRANTING ADEQUATE PROTECTION TO RICHARD A. VOELL PURSUANT TO U.S.C. §§ 363 AND 364**

Upon the emergency motion (the "Motion") dated August 12, 2014 of Smart Motion Robotics, Inc., debtor and debtor-in-possession (the "Debtor" or "Borrower"), to approve its use of cash collateral in which Richard A. Voell (the "Lender" or "Voell") holds an interest, pursuant to Sections 363 and 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. as amended (the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure as amended (the "Bankruptcy Rules"), for the Debtor, inter alia, (i) seeking this Court's authorization, pursuant to Bankruptcy Code § 363(c), to use Cash Collateral (as defined below) and, pursuant to Sections 361, 363 (e) and 364(d), to provide adequate protection to the Lender with respect to any diminution in the value of the Lender's interest in the Pre Petition Collateral (as defined below) resulting from the use of Cash Collateral and, the use, sale or lease of the Pre Petition Collateral (other than Cash Collateral); (ii) to grant the Lender, pursuant to Sections 364(c) and 364(d), security interests in all of the Debtor's presently owned and after acquired property, (iii) to grant the Lender, pursuant to Bankruptcy Code § 364(c)(1), priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than with respect to the U.S. Trustee's Fees (as defined below) and the Professional Carve-Out (as defined below), for any diminution in the value of Lender's interest in collateral; (iv) seeking a preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001; and (v) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order authorizing on a final basis, inter alia, the use of Cash Collateral.

A preliminary hearing having been held before this Court on August 13, 2014, and the Court having entered an interim agreed order, and a final hearing having been held before this Court on February 4, 2015; due and sufficient notice of the Motion, the Preliminary Hearing and the Final Hearing having been given; and upon the entire record made at the Preliminary Hearing and the Final Hearing, and this Court having found good and sufficient cause appearing therefore,

The Court now FINDS, DETERMINES, ORDERS, ADJUDGES, AND DECREES THAT:

1. On August 8, 2014 (the "Petition Date"), the Debtor filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is continuing in possession of its property, and operating and managing its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157

(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157 (b)(2).

3. Prior to the Petition Date, the Lender made certain loans to the Debtor as evidenced by (1) a "Secured Promissory Note" dated November 4, 2010, in the original principal amount of One Hundred and Fifty Thousand Dollars and 00/100 ($150,000.00) from Lender, as amended, modified and restated from time to time, the last amendment evidenced by "Amendment No. 3 to Amended and Restated Secured Promissory Note" dated June 2, 2011 (together, the "Note"), whereby the amount of the indebtedness was increased to Four Hundred and Seventy-Five Thousand Dollars and 00/100 ($475,000.00) (the "Pre-Petition Financing") and (2) a "Security Agreement" dated November 4, 2010 (the "Security Agreement"), whereby the Debtor granted a security interest to Lender in and lien on all of the personal property assets of the Debtor, which includes but is not limited to, inter alia: (a) all accounts; (b) all chattel paper; (c) all inventory; (d) all equipment; (e) all instruments; (f) all general intangibles, including intellectual property rights, along with other assets of the Debtor (collectively, the "Pre-Petition Collateral"), which Security Agreement was later amended by the "Amendment No. 1 to Security Agreement" dated June 2, 2011; and Lender perfected his security interest in the Pre-Petition Collateral by recording UCC - 1 Financing Statements on June 6, 2010 and on June 6, 2011 with the Illinois Secretary of State, respectively. The Note and Security Agreement shall be referred to herein as the "Pre-Petition Agreements."

4. The Lender asserts, and the Debtor concedes, that the Debtor was, as of the Petition Date, justly and lawfully indebted to the Lender under the Pre-Petition Financing in the amount of $493,049.32, exclusive of costs and attorneys' fees (the "Pre-Petition Indebtedness"). The Lender further asserts and the Debtor further concedes that the Debtor is liable to the Lender for the Pre-Petition Indebtedness.

5. As a result of the foregoing, and without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 17), the Lender holds a valid, perfected first priority lien and security interest on the Pre-Petition Collateral. Without prejudice to the rights of any other party (but subject to the limitations thereon described below in Paragraph 17), the Debtor acknowledges and stipulates that (i) all of the income and profits generated from the Debtor constitutes "Cash Collateral" within the meaning of Section 363 of the Code in which the Lender holds an interest.

6. The Debtor does not have sufficient working capital and financing to operate its business in the ordinary course or maintain its property in accordance with state and federal law without the use of Cash Collateral.

7. Given the Debtor's current financial condition, financing arrangements and capital structure, the Debtor cannot obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtor (i) granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below, (ii) securing, pursuant to Bankruptcy Code §§ 364(c) and (d), such indebtedness and obligations with security interests in and liens on all of the Debtor's property and the Pre-Petition Collateral, and (iii) providing for adequate protection of the Lender's interests.

8. The Court hereby authorizes the Debtor's use of Cash Collateral, ending upon a Termination Event (as defined in paragraph ¬¬¬13, infra) for the disbursements set forth in the budget, which is attached as Exhibit A hereto, as such budget may be modified from time to time by the Debtor with the prior written consent of the Lender (the "Budget"), and for no other purposes. The Debtor is and shall be

authorized to use Cash Collateral exclusively for disbursements to the extent and in the amounts set forth in the Budget. The Debtor may use Cash Collateral in an amount equal to up to ten percent (10%) more than a particular corresponding "category" in the Budget, measured on a cumulative, weekly basis, provided that (a) Cash Collateral is available, and (b) the aggregate amount of the Budget is not exceeded by more than ten percent (10%). In the event that the Lender, in its sole discretion, consents in writing to the use of Cash Collateral in a manner or amount which does not conform to the Budget (such use of Cash Collateral, a "Non-Conforming Use"), Debtor shall be authorized pursuant to this Order to expend Cash Collateral for such Non-Conforming Use without further Court approval and Lender is entitled to all of the protections specified in this Order for any such Non-Conforming Use.

9. Debtor's adequate protection payments in the amount of $2,000.00 per month, as provided in the Budget, are due to Lender on the fifteenth (15th) day of each month.

10. As further adequate protection for the use of the Collateral (including, without limitation, Cash Collateral), the Debtor shall maintain at all times a policy of casualty insurance in effect on all of the Lender's collateral for an amount at least equal to the Pre-Petition Indebtedness, naming the Lender as an additional loss payee.

11. In addition to Lender's security interests, liens, rights and other interests in and with respect to the Pre-Petition Collateral, as adequate protection for and to secure an amount equal to the diminution, from and after the Petition Date, in the value of the Lender's interests in the Prepetition Collateral, including without limitation any such diminution resulting from the use by the Debtor of the Cash Collateral, the Debtor hereby grants to Lender, with the Court's approval:
(i) a security interest in and lien (the "Replacement Liens") upon all of the Debtor's post-petition personal property, assets and rights of the Debtor of any kind or nature to the same extent as the Lender's Pre-Petition Collateral, in now owned and after-acquired property, and the proceeds, products, and profits thereof (collectively, the "Post-Petition Collateral"), provided, however, that neither the proceeds from the Chapter 5 causes of action nor the Chapter 5 causes of action themselves constitute Post-Petition Collateral, senior to any other security interests, liens or encumbrances, subject only to, in the following order of priority (a) valid, perfected and enforceable pre-petition liens which are senior to the Lender's liens or security interests as of the Petition Date (the "Prior Permitted Liens"), (b) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. § 1930 ("United States Trustee's Fees"), (c) any unpaid professional fees and disbursements incurred prior to the Termination Date (as hereinafter defined) by the Debtors or by an official committee of unsecured creditors appointed in the Case (the "Committee") in an aggregate amount not to exceed $35,000 (the "Professional Carve-Out") which shall not constitute a cap on the professional fees for which counsel for the Debtor or the Committee may apply to the Court or be paid pursuant to the Court's orders, and (d) the Lender's security interests and liens existing as of the Petition Date upon the Collateral; and (ii) an administrative claim with priority over all other administrative claims in the Cases, including all claims of the kind specified under Section 503(b) of the Bankruptcy Code (subject only to the items referred to in Paragraph 3(i)(b) and 3(i)(c) above, subject to Section 726 and 507 of the Code, in the event the case is converted to a proceeding under Chapter 7 under the Code);

12. The Replacement Liens shall be prior and senior to all liens and encumbrances (other than the Prior Permitted Liens) of all other secured creditors granted, or arising, after the Petition Date. The Replacement Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and the Lender shall not be required to file or serve financing statements, notices of lien or similar instruments in respect of the Pre-Petition Indebtedness which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate

and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens. If, however, the Lender at its sole discretion shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Lien, the Debtor is directed to cooperate with and assist in such process, the stay imposed by Bankruptcy Code § 362(a) is hereby lifted to allow the filing and recording of a certified copy of this Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Order.

13. The Debtor's use of Cash Collateral shall expire (subject to any applicable notice requirements as set forth infra), on the earliest to occur of (each such occurrence being hereinafter referred to as a "Termination Event") (a) the dismissal of the Case or the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code; (b) the entry by the Court of an order granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code to any entities other than Lender with respect to acts against the Pre-Petition Collateral and any property of the Debtor that would have constituted the Pre-Petition Collateral but for the operation of Section 552(a) of the Bankruptcy Code, without Lender's consent, with the exception of the agreement reached by the Debtor with Pearl Valley Farms, Inc.; (c) the appointment of a trustee or examiner or any representative with expanded powers for the Debtor; (d) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtor; (e) the Debtor's failure to adhere to the Budget in any material respect except with respect to a Non-Conforming Use provided such Non-Conforming Use is undertaken in accordance with the terms of this Order; and (f) the Debtor's failure to observe or perform any of the material terms or material provisions contained herein. On or after the occurrence of a Termination Event, the Debtor shall immediately cease using Cash Collateral upon receipt of notice of such Termination Event (the date of such cessation being referred to as a "Termination Date"); provided however that following the Termination Date, the Debtor or any official committee may seek entry of an Order after notice and hearing allowing the further use of Cash Collateral on such terms and conditions as the Court may require. Lender may, in its sole discretion, consent to extend the Termination Date without further order of the Court whereupon all of the terms, conditions, protection and other provisions of this Order shall remain in full force and effect upon the filing of a memorandum signed by counsel for the Lender and counsel for the Debtor informing the Court of such extension.

14. The Debtor is also hereby required to furnish to the Lender monthly reports of cash receipts and disbursements, including a reconciliation, showing any variances to the Budget and any Non-Conforming Use (the "Budget Reconciliation"). The Budget Reconciliation for each month shall be provided to the Lender by 5:00 p.m. (Central) on the second day of the following month, or if the second day is on a weekend, then the first business day of the following month. In addition, the Debtor shall deliver to the Lender such other information concerning the business and operations of the Debtor as the Lender shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lender under the Lender Pre-Petition Agreements, provided however that the Debtor reserves its right to claim that any such documents are protected under attorney-client privilege to the extent permitted under applicable law.

15. Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Order. Notwithstanding any such stay, modification, reversal or vacation, all use of Cash Collateral and other post-petition obligations incurred by the Debtor pursuant hereto or the Lender Pre-Petition Agreements prior to the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits of this Order, including without

limitation, the Replacement Lien and Trustee's Fees granted herein.

16. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, including (a) converting the Chapter 11 Case to Chapter 7; (b) dismissing the Chapter 11 Case, or (c) confirmation, and the terms and provisions of this Order as well as the Superpriority Claims and Replacement Liens granted pursuant to this Order shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims and Replacement Liens shall maintain their priority as provided by this Order until all Pre-Petition Indebtedness is paid in full.

17. This Order shall be binding upon all parties in interest, including without limitation, the Debtor and any statutory committees appointed in the Chapter 11 Case, unless (a) a party in interest (including any statutory committee appointed in the Chapter 11 Case) has properly filed an adversary proceeding or commenced a contested matter challenging the amount, validity, enforceability, perfection or priority of the Pre-Petition Indebtedness or the Lender's liens on the Pre-Petition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Lender relating to the Pre-Petition Indebtedness on behalf of the Debtor's estate, no later than March 31, 2015, and (b) the Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced within such time, the Pre-Petition Indebtedness shall not be subject to subordination nor otherwise unavoidable and, for all purposes in the Chapter 11 Case and any subsequent Chapter 7 case, the Lender's liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Lender, the Pre-Petition Indebtedness and the Lender's liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without, limitation, any successor thereto. If any such adversary proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of this Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter.

18. Except as expressly provided herein, this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Lender may have against the third parties, and without prejudice to the right of the Lender to seek relief from the automatic stay in effect pursuant to Bankruptcy Code § 362, or any other relief in the Chapter 11 Case, and the right of the Debtor to oppose any such relief. The provisions of this Order shall be binding upon and inure to the benefit of the Lender and its successors and assigns.

19. To the extent there exists any conflict between the Lender Pre-Petition Agreements and the terms of this Order, this Order shall govern.

Enter:

Dated: FEB 12 2015

United States Bankruptcy Judge

**Prepared by:**
John A. Lipinsky ARDC: 6207678
Coman & Anderson, P.C.
650 Warrenville Road, Suite 500
Lisle, IL 60532

Rev: 20130104_bko

T: (630) 428-2660
F: (630) 428-2549

Small Business Cash Flow Projection
SMART MOTION ROBOTICS, INC.

| Starting date | 2/7/2015 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Cash balance alert minimum | 70,000 | | | | | | | | |
| | Beginning | W.E. 2/13 | W.E. 2/20 | W.E. 2/27 | W.E. 3/6 | W.E. 3/13 | W.E. 3/20 | W.E. 3/27 | W.E. 4/3 | Total |
| Cash on hand (beginning of month) | 170,006 | | | | | | | | | |
| **CASH RECEIPTS** | | | | | | | | | | |
| Cash sales | | | | | | | | | | 0.00 |
| Returns and allowances | | | | | | | | | | 0.00 |
| Collections on accounts receivable | | 234320.00 | 1600.00 | 23949.00 | 762579.00 | | | | 5000.00 | 1032448.00 |
| Interest, other income | | | | | | | | | | 0.00 |
| Loan proceeds | | | | | | | | | | 0.00 |
| Owner contributions | | | | | | | | | | 0.00 |
| TOTAL CASH RECEIPTS | | 234320.00 | 1600.00 | 23949.00 | 762579.00 | 5000.00 | | 0.00 | 5000.00 | 1032448.00 |
| Total cash available - (not counting expenses) | 170,006 | 404326.00 | 405926.00 | 429875.00 | 1192454.00 | 1197454.00 | 1197454.00 | 1197454.00 | 1202454.00 | 1202454.00 |
| **CASH PAID OUT** | | | | | | | | | | |
| Payroll | | 15500.00 | | 18800.00 | | 15500.00 | | | 18800.00 | 68600.00 |
| Payroll taxes | | 4205.00 | | 6098.00 | | 4205.00 | | | 6098.00 | 20606.00 |
| Payroll commissions | | | | | 10090.00 | | 35503.00 | | | 45593.00 |
| Unemployment taxes | | | | | | | | | | 0.00 |
| Insurance health | | | | | 1133.00 | | | | 1133.00 | 2266.00 |
| Insurance | | 250.00 | 750.00 | | | 250.00 | | 750.00 | | 2000.00 |
| Interest exp | | | | | | | | | | 0.00 |
| Materials and supplies (in COGS) | | 92000.00 | 136000.00 | 28000.00 | 202000.00 | 3500.00 | | 25000.00 | | 486500.00 |
| Materials and supplies (conveyor) | | | | | 46342.00 | | | | | 46342.00 |
| Office expense | | | 200.00 | | | | 200.00 | | | 400.00 |
| Phones | | | 760.00 | | | | 760.00 | | | 1520.00 |
| Phones (cell) | | 300.00 | | | | 300.00 | | | | 600.00 |
| Utilities (elect,gas,water, garbage, propane) | | | 3500.00 | | | | 3500.00 | | | 7000.00 |
| Rent | | 14300.00 | | | 14300.00 | | | | 14300.00 | 42900.00 |
| Rent or lease: vehicles, equipment | | 972.00 | | | | 972.00 | | | | 1944.00 |
| Rent or lease: vehicles, equipment | | | | | | | | | | 0.00 |
| Repairs and maintenance (leasehold exp) | | | 1000.00 | 2000.00 | | 1000.00 | | 2000.00 | | 6000.00 |
| Supplies (not in COGS) | | | 500.00 | | | 500.00 | | | 500.00 | 1500.00 |
| Taxes and licenses | | | | | | | | | | 0.00 |
| Travel (sales) | | | 5000.00 | | | 3000.00 | 5000.00 | | 3000.00 | 16000.00 |
| Travel (installation) | | | | 5000.00 | | | | | 6000.00 | 11000.00 |
| Equipment purchase | | | 210.00 | | | | 210 | | | 420.00 |
| Bank service charges | | | | | | | | | | 0.00 |
| Cleaning Services (offices) | | | 200.00 | | | | 200.00 | | | 400.00 |
| Freight/Shipping | | 2500.00 | 160.00 | 250.00 | 2500.00 | 160.00 | 160.00 | 160.00 | 160.00 | 6210.00 |
| IT Services, website | | | | | 5000.00 | | | | | 5000.00 |
| Tradeshow expenses (IPPE2015) | | 8600.00 | | 1500.00 | | | | | | 10100.00 |
| Inventory purchases | | | | | | | | | | 0.00 |
| Postage | | | 100.00 | | | | | | | 100.00 |
| Web Hosting (PHP) | | | | | | | | | | 0.00 |
| Hr expense (recruitment) | | 59.00 | | | | 59.00 | | | 59.00 | 177.00 |
| Dave Roehr (accounting) | | 2000.00 | | | 2000.00 | 2000.00 | | | | 6000.00 |
| Adequate protection pmts | | | 2000.00 | | | | 2000.00 | | | 4000.00 |
| Trustee fees | | | | | | | | | | 0.00 |
| TOTAL CASH PAID OUT | | 140686.00 | 150380.00 | 61648.00 | 281365.00 | 31446.00 | 47533.00 | 27910.00 | 49991.00 | 793178.00 |
| Cash on hand (end of week) | 170,006 | 263,640.00 | 114,860.00 | 77,161.00 | 558,375.00 | 531,929.00 | 484,396.00 | 456,486.00 | 411,495.00 | 409,276.00 |